Eliana **MARTINEZ**, By and Through her
next friend, Rosa A. **MARTINEZ**, her
mother, Plaintiff,

v.

The **SCHOOL BOARD OF HILLSBOR-
OUGH COUNTY, FLORIDA,**
Defendant.

No. 87–1308–CIV–T–17(A).

United States District Court,
M.D. Florida,
Tampa Division.

April 26, 1989.

Stephen F. Hanlon, Barnett, Bolt & Kirk-
wood, Tampa, Fla., for plaintiffs.

Alice K. Nelson, Jodi Siegel, Southern
Legal Counsel, Inc., Gainesville, Fla, for
amicus curiae Advocacy Center.

Arlene Brynne Mayerson, Linda D. Kilb,
Diane J. Lipton, Berkeley, Cal., for amicus
curiae Disability Rights Educ. and Defense
Fund.

W. Crosby Few, and Thomas M. Gonza-
lez, Thompson, Sizemore & Gonzalez, Tam-
pa, Fla., for defendants.

## MEMORANDUM OPINION

KOVACHEVICH, District Judge.

This cause of action is before the Court
on remand from the Eleventh Circuit Court
of Appeals. The matter previously came
before the Court for trial, without jury, on
July 13 and 14, 1988. The Court issued its
memorandum opinion in the case on Au-
gust 8, 1988. The Court made the follow-
ing relevant conclusions of law:

1. The Rehabilitation Act of 1973 does
not add to the rights available to Plain-
tiff under the EHCA. *Smith v. Robin-
son,* 468 U.S. 992, 104 S.Ct. 3457, 82
L.Ed.2d 746. (1984). As in that case, the
claims under the constitution are identi-
cal to those under the EHCA and the
legal and factual questions are thus the
same. The *Smith* decision has been
amended by Congress insofar as recov-
ery of attorney's fees under the EHCA
has been added to the statute. The Su-
preme Court's conclusions with respect
to identity of relief available under the
two statutes and the constitution are still
valid. Therefore, this cause may be de-
cided using the legal test developed un-
der the EHCA.

2. Under the Education for All Handi-
capped Children Act (hereafter EHCA),
20 U.S.C. §§ 1401, *et seq.,* Plaintiff is

entitled to a free, appropriate public education in the least restrictive appropriate environment.

3. The EHCA does not require the State provide services sufficient to maximize each child's potential "commensurate with the opportunity provided other children." *Hendrick Hudson District Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Implicit in the congressional purpose of providing access to a "free appropriate public education" is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child. *Id.* at 200, 102 S.Ct. at 3047.

4. The parties agree that the appropriate standard for placement of Eliana Martinez (hereinafter Eliana) is a "free appropriate public education" in the "least restrictive environment" appropriate to the circumstances of the case. The parties, however, do not agree what the appropriate least restrictive environment is in this case.

5. Plaintiff asserts that the appropriate placement is in a TMH classroom, without further modification. Plaintiff has proposed some restrictions to that access, if the Court does not agree to unrestricted access, such as placement in a non-ambulatory TMH class or provision for a full-time aide for Eliana; these are acceptable to Plaintiff in order to change Eliana's placement.

6. Defendant asserts, on the other hand, that the appropriate placement for Eliana remains homebound education, due to the facts that Eliana has AIDS, is not potty trained, and therefore poses a potential danger to the students of the TMH class which she desires to attend. Defendant additionally alleges that the EHCA does not require the School Board to provide one-on-one education within the context of the integrated classroom.

7. The homebound program which is now being provided to Eliana clearly deprives her of certain benefits of a classroom education, including socialization and modeling processes. The question the Court must address is whether or not other factors outweigh this clear deprivation of educational benefits so as to prevent the placement of Eliana in a TMH classroom.

8. The parties have offered the Court two divergent views on what is the most appropriate and least restrictive educational placement for Eliana Martinez: homebound education, and, placement in an integrated TMH classroom, with or without special accommodations. The Court believes the appropriate educational placement lies somewhere between these two positions.

9. The Court, once again, is faced with the challenge of making a medical judgment based on divergent medical testimony and opinion. The Court must balance the right of Eliana Martinez to get the most appropriate education available, against the danger, if any, posed to the specific population, the TMH students, who will be exposed to Eliana. The children in this TMH classroom are there because of their right to an appropriate and free public education and as required by the laws of the state for school attendance. As this Court said in *Ray v. The School District of DeSoto County,* 666 F.Supp. 1524, 1535 (M.D.Fla.1987):

The public at large has several interests to be considered here. First, is the concern of the public to provide adequate, non-discriminatory education to all the children of the state. The children of this state include children like the Ray boys, who, through no fault of their own, have contracted this disease; it clearly provokes in many, fear and a desperate desire to segregate them from mainstream life. ·However, there is an equally important public interest in protecting the health and safety of the public at large, and here, specifically, the school population which would be in contact with the Ray boys, if they are returned to an integrated classroom.

10. The Court's inquiry should focus on the following factors, based upon reasonable medical judgment and the state of medical knowledge: the nature of the risk, the duration of the risk, the severity

of the harm, and the probability of transmission which will cause varying degrees of harm. *See, School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987).

11. These factors have been addressed by this Court in the findings of fact. The severity of the harm if transmission occurs is clear; it is most likely fatal. At this time, the only time transmission would not be fatal is if the transmission resulted in seroconversion which never became symptomatic; otherwise, medical opinion is that all persons infected and symptomatic will die at some future time, perhaps as little as six (6) months from the onset of becoming symptomatic.

12. To the best of medical knowledge, at this time, the duration of the risk of transmission is perpetual; there is no evidence that transmissibility changes during the course of the disease.

13. The last two factors are essential to the consideration of this cause of action: the nature of the risk (How is the disease transmitted?) and the probabilities of transmission. AIDS has been proven to be transmitted in various ways: sexual intercourse, homosexual or heterosexual; intravenous drug use, sharing of needles and other equipment; perinatally; through breast milk; and through the transfusion of blood and blood products.

14. The virus has been isolated in other body secretions, including tears, saliva, and urine; but it has not been proven that transmission has occurred through any of these secretions. The possibility of transmission is generally conceded to be a "remote theoretical possibility." However, the CDC has not changed its recommendation that children without control of their bodily secretions might require a more restricted educational placement. It has added to its educational recommendations for schools, as of January 29, 1988, the statement that deep, open-mouthed kissing could theoretically transmit the HIV virus through the exposure of mucous membranes to infected blood and saliva.

15. Eliana Martinez is a neurologically handicapped child who has a case of AIDS, in the last stages of that disease, who is incontinent and who mouths her thumb and forefinger on a continuous basis. These bodily secretions, urine and saliva, have a remote possibility of being a route of transmission to the children of the TMH classroom that she desires to attend. For these reasons, the Court cannot find that the appropriate placement for Eliana is the totally unrestricted placement into the TMH classroom at Manhattan Elementary School; nor, on the other hand, can the Court agree that the proper placement for this child is in a homebound program. The Court finds that a restricted placement, as explained below, into the TMH classroom of Manhattan Elementary School is the appropriate least restrictive environment for Eliana Martinez, at this time, in the present circumstances.

16. As the Court noted earlier Eliana Martinez is free to enjoy the public and private areas of this city, this county, and this country in other respects. The only concern of this Court, in this opinion, is to balance the factors in this cause and devise an appropriate, free educational placement for Eliana Martinez, in the least restricted appropriate educational setting.

Based on the finding of fact and conclusions of law, the Court ordered that Eliana be placed in the Trainable Mentally Handicapped (hereinafter TMH) classroom of Manhattan Elementary School under certain "conditions, limitations, and restrictions, to be **strictly adhered** to by all parties and subject to the review of this Court." The conditions imposed by the Court included the construction of a separate glass room in which Eliana was to attend school **only so long** as she remained incontinent and continued to mouth her fingers, despite instruction to the contrary.

At the point she became potty trained and no longer mouthed her fingers she was to be removed from the constructed room and placed in the general TMH classroom. Upon entering the general classroom, Eliana was to be provided a full-time aide to assist in the education of the child, to main-

tain a reasonable separation of other children and Eliana, and to assist in the control of accidental spillage of bodily fluids in the case of an emergency. The order contained two further restrictions: 1) Eliana was restricted from the integrated classroom at anytime she has open sores or lesions, either on the body or in the mouth and 2) if a question of the advisability of the child being in the integrated classroom arose, the school nurse was to be consulted.

Plaintiff originally appeared to be prepared to accept this Court's imposed conditions and restrictions for attendance in the TMH classroom. Defendant, therefore, constructed the room required by the Court's order. However, on August 16, 1988, Plaintiff filed a notice of appeal to the Eleventh Circuit Court of Appeals. The order of August 8, 1988, was stayed and Eliana remained in homebound instruction pending resolution of the appeal.

The appellate court's opinion vacating and remanding the cause was issued December 1, 1988, 861 F.2d 1502. That court found that, in determining a case pursuant to the Education of the Handicapped Act (EHA) in conjunction with Section 504 of the Rehabilitation Act of 1973 (Section 504), the Court must first determine the most appropriate educational placement for the handicapped child that has an infectious disease under the EHA. Then, the question is whether the child is otherwise qualified pursuant to Section 504 to be educated in that setting despite the communicable disease. If the child is not otherwise qualified, the final question for the court is whether reasonable accommodations could reduce the risk of transmission so as to make the child otherwise qualified to be educated in that setting.

The Eleventh Circuit opinion stated the following relative to the issues they expostulated:

1. As the parties agreed, the appropriate educational placement for Eliana under the EHA would be the regular TMH classroom if she did not suffer from AIDS.

2. The trial court found a "remote theoretical possibility" of transmission with respect to tears, saliva and urine. This does not rise to the "significant" risk level that is required for Eliana to be excluded from the regular TMH classroom.

3. The court below made no findings with respect to the overall risk of transmission from all bodily substances, including blood in the saliva, to which other children might be exposed in the TMH classroom.

4. [W]e remand with directions that the trial court made findings as to the overall risk of transmission so that it can determine whether Eliana is otherwise qualified to attend classes in the TMH classroom.

5. If the risk of transmission supports a finding that Eliana is not "otherwise qualified" to attend classes with the other children in the TMH classroom, the court must consider whether reasonable accommodations would make her so.

6. On remand, the court must hear evidence concerning the effect of any accommodation that would be reasonable based upon the risk of transmission. This evidence must, at the minimum, relate to the effect of the proposed remedy on her (Eliana's) psychological and educational development.

Based on the remand from the appellate court, this Court, on January 10, 1989, reopened the case and ordered that the parties submit, by affidavit, deposition or otherwise, such additional evidence as they deem necessary to the Court's consideration of the effect of any contemplated accommodation.

Various affidavits and depositions have been filed in response to this Court's order of January, 1989. The Court has reviewed all of the submissions made since the remand order. The Court finds that the following findings of fact are relevant to the decision of the educational placement of Eliana Martinez:

1. The American Academy of Pediatrics' Redbook contained the following

recommendation at the time of the trial and previous order in this cause:

> Some infected students may pose an increased risk to others in school. Students *who lack control of their body secretions,* who display behavior such as biting, or who have open skin sores which cannot be covered require a more restricted school environment until more is known about the transmission of the virus in these circumstances. Arrangements for special education should be made for children who are unable to attend regular classes. (Emphasis supplied).

2. The revised AAP Redbook, the 1988 edition, has amended that recommendation as follows:

> Some infected students may pose an increased risk to others in school. Students who display biting behavior or who have exudative, weeping skin sores that cannot be covered require a more restricted school environment until more is known about the transmission of the virus in these circumstances. Special education should be provided for children who are unable to attend regular school classes.

The American Academy of Pediatrics has thereby *eliminated* the recommendation that children who cannot control their bodily secretions should be placed in a more restricted environment.

3. The Center for Disease Control (hereinafter CDC)'s June 24, 1988, update states:

> Universal precautions do not apply to feces, nasal secretion, sputum, sweat, tears, urine and vomitus unless they contain visible blood. The risk of transmission of HIV and HBV from these fluids and materials is extremely low or non existent.

4. *At trial* Dr. Russell, one of Eliana's treating physicians at the University of South Florida, stated he felt Eliana should be set apart from other children by six (6) to eight (8) feet and there would have to be a *guarantee* that there would be no contact between children and no contact between bodily secretions.

5. In his most *recent testimony, Dr. Russell* has *receded* from that position. Dr. Russell stated that his testimony about the separation of the children was probably more for his comfort than for the degree of risk involved. The doctor now states that the risk is so low statistically that he *doesn't feel* the *risk warrants* such *precautions.* Dr. Russell would still feel better if an aide was assigned to Eliana, as he feels the *risk* is *greater* that *Eliana will contract something from another child that will kill her than any risk to another child from her.* (Dr. Russell deposition of January 13, 1989).

6. At the time of the trial and first order, Eliana was fairly continuously *sucking on her fingers.* That behavior is *now controllable.* The testimony and evidence now reveals that Eliana can be instructed to refrain from placing her fingers in her mouth, that she will obey those instructions, that she has learned to sign a request to place her fingers in her mouth and wait for permission to do so, and that the finger sucking is primarily evident when Eliana is tired, bored or not involved in the surrounding events. When participating in activities which are interesting, Eliana does not tend to put her fingers in her mouth. (Depositions and affidavits of Rosa Martinez, Dr. McClowrey, and Peggy Kelly).

7. *Previously, Eliana* had not been and was *not being potty trained. Since* the *August, 1988,* order there has toilet training has been commenced with some success. Eliana has become an active participant in the training since about November or December of last year. Eliana is no longer content with wearing a soiled or wet diaper. *She has started to sign "toilet" when the procedure is necessary,* she may be in the process of the act but she has connected the act with the appropriate response of needing the toilet. (Deposition and affidavits of Rosa Martinez, Dr. McClowrey, and Peggy Kelly).

8. *Eliana's thrush* will typically follow only a regimen of broad spectrum antibiotics and is only intermittent. (Dr. Rus-

sell deposition). There has been *no report of visible blood in Eliana's mouth* during an onset of active thrush. (Affidavit of Rosa Martinez).

9. Although she does not believe them necessary, Rosa Martinez states she is willing to accept a one-on-one aide for Eliana and is willing to submit Eliana to a daily nurse's examination to ascertain that school attendance is advisable that day.

10. Plaintiff requests that the Court require the school system to undertake an aggressive and extensive education program to educate all adults and children involved with Eliana about AIDS.

The Court in this case, as in any case involving such a potentially lethal disease, must be cautious, considerate, and deliberate regarding any decision. The medical testimony in this cause is polarized; unfortunately, judicial decisions must be made before medical science has definitive answers.

This Court's decision in *Ray v. The School District of DeSoto County,* 666 F.Supp. 1524 (M.D.Fla.1987), was founded upon one word: responsibility; responsible conduct of the children and their families was mandated. The Court has the obligation to focus on the concept of responsibility within the parameters of this case, also.

Voluntary associations at parks, malls, playgrounds, and other public facilities is a matter of choice; a person may elect to come, or to go, and, to associate or not to associate as they may see fit. In a public school setting, the association is both involuntary and compulsory; eligible students do not have a choice. Therefore, the obligation is clear to create an environment that is reasonably risk-free for *all* who must associate with one another.

In the special education classes, these children generally possess bodies that have some type of handicap that relegates them to special, involuntary, and compulsory associations. In this setting, disease transmission is *not* a one-way street; a child may be a sender, and, a receiver. With AIDS, it is a life-threatening delivery. It is

the duty of this Court to determine if the risk of transmission of AIDS to the other students of the TMH class, or, the risk of transmission of other diseases to Eliana Martinez requires the exclusion of Eliana from the classroom, and, if any accommodation would negate such exclusion if it is otherwise required.

The Court has seriously considered the allegations now being raised that the risk to Eliana far outweighs any benefit to her from attending school with other children. This risk is not unique to Eliana Martinez; the Ray boys faced similar risks in attending school as do other immune suppressed children, including children with cancer. The decision must balance the risk to the child versus the benefit which flows from the attendance at school. Keeping this child out of school does not guarantee her safety and long life; death if it seeks and takes Eliana may come from various sources which are available to her without restriction: the park, the mall, or her home. Upon conscientious consideration of the issue from all sides, the Court cannot find that the risk is significant enough to counterbalance the benefit and rights to this child inherent in attending school with other children.

Following the *Ray* precedent of responsible conduct upon the part of the children and their family, it would appear that substantial compliance with personal hygiene as conditions precedent in order to interact with other children has been accomplished. The evidence reveals that Eliana is capable of being instructed not to suck or mouth her fingers and that she is well on her way to being fully toilet trained. This evidence, in conjunction with the previously stated changes in the testimony of Dr. Russell, whose testimony was a *major* factor in the Court's previous decision, *and,* the *changes* in Pediatric Redbook is the basis of the following conclusions of law:

1. The appropriate educational placement for Eliana Martinez under the Education for All Handicapped Children would be the regular Trainable Mentally Handicapped classroom if she did not suffer from AIDS.

2. The possibility of transmission with respect to tears, saliva, and urine is remote and theoretical and does not rise to the "significant" risk level that is required to bar Eliana Martinez from the regular Trainable Mentally Handicapped classroom.

3. The evidence does not support a finding that the overall risk of transmission from all bodily substances, including blood in the saliva, rises to the "significant" risk level of requiring this child's exclusion from the classroom. The Court finds that the previously defined conditions precedent to integration into the Trainable Mentally Handicapped have been substantially complied with by Plaintiff.

4. The Court finds that Eliana Martinez is "otherwise qualified" to attend the Trainable Mentally Handicapped classroom at Manhattan Elementary School, which is the most appropriate educational setting for this child pursuant to the EHA.

5. Since the Court finds Eliana Martinez "otherwise qualified" to attend this classroom, it is unnecessary for the Court to consider the effect of any accommodation.

6. The Court readopts its previous conclusion of law stating that if there is a question of the advisability of Eliana being in the classroom on a certain day, the school nurse should be consulted for an evaluation of either Eliana, or another child, if the danger may be an infection from another child to Eliana. It is not necessary for Eliana, nor the rest of the TMH students, to be seen by the nurse or other health practioner on a daily basis to determine if Eliana should be in the integrated classroom that day.

7. The Court will require that the Hillsborough County School Board provide educational programs to the school parent population, and, student population as far as is practicable, that will be associated with Eliana Martinez in the classroom, with the aim of educating and informing them regarding the realities of AIDS, and, the proper procedures in order to deal with the situation and minimize the risk of transmission to others. In addition a copy of this Order is to be made available to the public at the Office of Manhattan Elementary School. Accordingly, it is

ORDERED that Defendant The School Board of Hillsborough County, Florida admit Plaintiff Eliana Martinez to the Trainable Mentally Handicapped classroom of Manhattan Elementary School within the parameters of this order.

DONE and ORDERED.