**Paul SCOLES, M.D.**

v.

**MERCY HEALTH CORPORATION OF SOUTHEASTERN PENNSYLVANIA,**
**et al.**

**Civ. A. No. 92–6712.**

United States District Court,
E.D. Pennsylvania.

Dec. 8, 1994.

Robert S. Saunders, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE, John Adam Di Pietro, Conshohocken, PA, Scott Burris, ACLU of Pennsylvania, Philadelphia, PA, Michael T. Isbell, National Office of Lamda Legal Defense & Educ. Fund, Inc., New York City, for plaintiffs.

Nicholas N. Price, Schnader, Harrison, Segal & Lewis, Dennis R. Suplee, Philadelphia, PA, for defendants.

### MEMORANDUM

JAMES McGIRR KELLY, District Judge.

Presently before the court are the Second Motion of Plaintiff, Paul Scoles, M.D., for Partial Summary Judgment and the Motion of Defendants, Mercy Health Corporation of Southeastern Pennsylvania, Mercy Catholic Medical Center of Southeastern Pennsylvania, Mercy Health Plan, Plato A. Marinakos and Thomas F. Toomey, Jr., M.D. for Partial Summary Judgment. For the reasons set forth below, Plaintiff's Motion will be denied and Defendant's Motion will be granted.[1]

## BACKGROUND

Plaintiff, Paul Scoles, M.D. ("Dr. Scoles"), is a resident of Pennsylvania and an orthopedic surgeon. Defendant Mercy Health Corporation is a corporation doing business in Pennsylvania with principal offices in Bala Cynwyd, Pennsylvania. Defendant Mercy Catholic Medical Center is a corporation doing business in Pennsylvania and is a subsidiary of Mercy Health Corporation. Mercy Catholic Medical Center operates two hospitals in the area: Fitzgerald Mercy Hospital in Darby, Pennsylvania and Misericordia Hospital in Philadelphia, Pennsylvania. Defendant Mercy Health Plan is a corporation doing business in Pennsylvania and has its principal office in Lester, Pennsylvania. Mercy Health Plan is also a subsidiary of Mercy Health Corporation. Mercy Health Plan contracts with health care providers to provide health care to Mercy Health Plan subscribers, who are Medicaid recipients. The parent, Mercy Health Corporation, also operates Mercy Work Care and Mercy Careport, two occupational health programs that provide health care to workers at two locations in Philadelphia. Defendant Plato A. Marinakos is the President and Chief Executive Officer and the former Executive Vice President of Mercy Health Corporation. Defendant Thomas F. Toomey, Jr., M.D. is Senior Vice President for Professional Affairs and Medical Director for Mercy Health Corporation and Mercy Catholic Medical Center.

---

1. On November 15, 1994, Defendants filed a Motion to Supplement the Record in Support of their Motion for Partial Summary Judgment and in Opposition to Plaintiff's Second Motion for Partial Summary Judgment. In their motion, Defendants submit additional articles about HIV-infected physicians and the resulting medical ethics issues. The motion was unopposed except that Plaintiff did not concede the relevance of any of the documents. The court granted the Motion to Supplement on November 29, 1994 subject to the reservations of Plaintiff. The articles do not affect the reasoning of the court in concluding that summary judgment in favor of Defendants is appropriate.

Dr. Scoles is an orthopedic surgeon infected with the Human Immunodeficiency Virus ("HIV"), the virus that causes Acquired Immune Deficiency Syndrome ("AIDS"). Dr. Scoles began practicing at Mercy Catholic Medical Center ("Center") in 1985. Dr. Scoles has provided health care at Defendants' various facilities.

In late July, 1991, Dr. Scoles disclosed his HIV-positive status to Dr. Leon Clarke, Director of Surgery at Misericordia Hospital, one of Defendant Center's hospitals. Dr. Clarke notified Defendant Dr. Toomey. After various officials of the Defendants held a meeting, it was decided that Dr. Toomey would seek Dr. Scoles's agreement to cease performing surgery at Defendants' facilities and to cooperate in notifying past patients of his HIV-positive status.

In light of the Pennsylvania Confidentiality of HIV–Related Information Act, Defendants filed a petition with the Court of Common Pleas of Delaware County on August 9, 1991. After a hearing on whether there was a "compelling need" to notify Dr. Scoles's former patients of his HIV status, the court granted Defendants permission to do so.

On September 16, 1991, Defendant Center sent letters to 1050 former patients of Dr. Scoles as authorized by the court. The letters informed the patients that their surgery had been performed by an orthopedic surgeon who was recently discovered to be HIV-positive. Also on September 16, Defendant Plato Marinakos, as Executive Vice President for Mercy Health Corporation and Mercy Catholic Medical Center notified Dr. Scoles that his clinical privileges to perform diagnostic or therapeutic invasive procedures at Mercy Catholic Medical Center were suspended. In his letter to Dr. Scoles, Defendant Marinakos also stated that prior to each proposed invasive procedure, Dr. Scoles would have to seek Defendants' approval by submitting documentation that the patient had consented to the procedure being aware of Dr. Scoles's HIV status. On September 18, 1994, defendant Center held a press conference and informed the public of its actions but did not disclose Dr. Scoles's name. The Center also notified its employees, staff,

Board of Directors and two other hospitals regarding its actions.

At that point, Dr. Scoles sought a hearing under the Center's by-laws. After a hearing held in April of 1992, the Center's Medical Board decided that Dr. Scoles should be reinstated with full privileges. The Center's Board of Directors then considered the matter and convened an *ad hoc* committee. The committee recommended that Dr. Scoles's privileges be reinstated on the condition that Dr. Scoles inform his patients of his HIV status prior to any invasive procedure.

Although Defendants did not reveal Dr. Scoles's identity, Plaintiff claims that his identity was easily deduced from Defendants' statements. Plaintiff also charges that Defendants disclosed the fact that he was employed with Greater Atlantic Health Service ("Greater Atlantic"), an entity unrelated to Defendants, and had surgical privileges at Graduate Hospital. Plaintiff claims that as a result, he was forced to terminate his employment with Greater Atlantic and take a disability policy. Plaintiff also states that referrals from the Center dropped to zero and that his name was removed from the list of Mercy Work Care and Mercy Careport physicians, even though his practice in those programs did not include invasive procedures.

Plaintiff filed his First Amended Complaint on April 15, 1994. Plaintiff asserts in Count I that Mercy Health Corporation, Mercy Catholic Medical Center, Mr. Marinakos and Dr. Toomey ("the Hospital defendants") violated Section 504 of the Rehabilitation Act of 1973 by discriminating against him on the basis of handicap while receiving federal funds. Count II alleges the same violation by Defendant Mercy Health Plan. In Count III, Plaintiff claims that the Hospital defendants also violated Section 101 of the Americans with Disabilities Act.

Defendants have moved for partial summary judgment. With the exception of Plaintiff's claims regarding Mercy Work Care and Mercy Careport (which concern non-invasive procedures), Defendants claim that they are entitled to judgment as a matter of law. Defendants argue that prohibiting Dr. Scoles from performing surgery with-

out patient consent given with the knowledge of his HIV status was within the boundaries of the law. Specifically, Defendants claim that they did not violate the Rehabilitation Act or the Americans with Disabilities Act ("ADA") because Dr. Scoles was not "otherwise qualified" to perform his duties as an orthopedic surgeon and presented a "direct threat" to his patients.

Plaintiff has also moved for partial summary judgment. Plaintiff vigorously disputes Defendants' claims that Dr. Scoles presents a danger to his patients. Plaintiff argues that the Defendants' actions were motivated by an unreasonable fear of AIDS and liability concerns rather than an objective evaluation of the risk of HIV transmission from surgeon to patient. Plaintiff claims that the risk of transmission is minuscule and theoretical. Thus, Defendants' actions against Dr. Scoles were unjustified and in violation of the Rehabilitation Act and the ADA.

## DISCUSSION

### I. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This court is required, in resolving a motion for summary judgment pursuant to Rule 56, to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, the evidence of the nonmoving party is to be believed, and the district court must draw all reasonable inferences in the nonmovant's favor. *See id.* at 255, 106 S.Ct. at 2513–14. Furthermore, while the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact, Rule 56(c) requires the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### II. Plaintiff's Motion for Summary Judgment

#### A. Rehabilitation Act of 1973

■ Plaintiff Dr. Scoles has charged that Defendants have violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits discrimination on the basis of disability by a program receiving federal assistance.[2] Defendants receive federal funds under Medicare and Medicaid programs. It is undisputed that Defendants' actions against Dr. Scoles were motivated by the fact that Dr. Scoles is infected with the HIV virus.

Plaintiff cites numerous articles and studies indicating that a reliable estimate of the probability of an infected surgeon transmitting the HIV virus to a patient during an invasive procedure is unavailable. Plaintiff cites one estimate by the Centers for Disease Control ("CDC") in 1991 which ranged from 1/41,600 and 1/416,000 (Pl. Brief p. 22). Plaintiff notes the fact that the only alleged case of HIV transmission from a health care worker to a patient is that of Dr. David Acer, the HIV-infected Florida dentist, six of whose patients contracted HIV. Defendants emphasize the fact that the CDC concluded that Dr. Acer probably transmitted the disease to his patients and that a review by the General Accounting Office ("GAO") essentially approved the CDC investigation. In contrast, Plaintiff provides the results of other

---

**2.** Section 504 of the Rehabilitation Act provides, in part:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...

29 U.S.C.A. § 794(a) (West Supp.1994).

investigations revealing flaws in the CDC investigation and suggesting that Dr. Acer's patients could have been infected by someone else. Thus, whether there has been a documented case of HIV transmission from a health care worker to a patient is in dispute. Also uncertain, mainly due to the state of current medical knowledge, is the probability of transmission from a surgeon to a patient during an invasive procedure such as orthopedic surgery.

What is not in dispute, however, is the existence of such a risk. Even if the risk is "exceedingly low", as characterized by Plaintiff, the risk of blood to blood contact between the orthopedic surgeon and patient during an invasive procedure is a real one. Specifically, there is a danger of the surgeon cutting himself during an operation while working in the patient's body cavity.

Plaintiff relies on *School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), a Supreme Court case discussing the application of the Rehabilitation Act to a teacher infected with tuberculosis. The Court held that persons disabled by contagious diseases are protected by Section 504 of the Rehabilitation Act. *Id.* at 286, 107 S.Ct. at 1130. The Court also held that there must be a "significant risk" to the health or safety of others before a federally assisted program may discriminate against a person on the basis of a communicable disease. *Id.* at 287, 107 S.Ct. at 1130–31. The Court approved consideration of the following four factors in determining whether a person poses a "significant risk" and is thus not "otherwise qualified" for the position: (a) the nature of the risk (how the disease is transmitted), (b) the duration of the risk, (how long is the carrier infectious), (c) the severity of the risk (what is the potential harm to third parties) and (d) the probabilities the disease will be transmitted and will cause varying degrees of harm." *Id.* at 288, 107 S.Ct. at 1131.

Plaintiff argues that under the *Arline* test, Dr. Scoles is clearly *not* a "significant risk". Plaintiff emphasizes that the only alleged case of HIV transmission from a health care worker to a patient is a matter of controversy. Thus, Plaintiff argues, that mode of HIV

transmission is unproven. Plaintiff relies on probability estimates suggesting that such transmission of HIV is very unlikely. Plaintiff also discusses cases where courts found the risk of HIV transmission so remote that discriminatory treatment was unjustified.

Despite these arguments, Plaintiff does not succeed in convincing the court that he is entitled to summary judgment on his Rehabilitation Act claims. The facts of HIV transmission as presented by Plaintiff do not prove that Dr. Scoles is not a "significant risk" to his patients. Plaintiff's main argument is that the risk is not significant because surgeon-to-patient transmission is unlikely and undocumented. Under the *Arline* standard discussed by Plaintiff, however, there is some basis to characterize Dr. Scoles's condition as a "significant risk" even assuming that the probability of Dr. Scoles transmitting the disease during surgery is low. *Arline* directs the court to weigh the duration and severity of the risk. As there is no known cure for AIDS, the risk of Dr. Scoles transmitting HIV during surgery will be present each time he performs an operation. The severity of the harm is high. Even though Plaintiff states that some HIV-positive people live for many years after diagnosis, the current medical knowledge indicates that once AIDS develops, the disease will most likely cause death.

The cases cited by Plaintiff also do not support the proposition that Dr. Scoles is not a "significant risk". Plaintiff cites, among numerous other cases, *Chalk v. United States District Court*, 840 F.2d 701 (9th Cir. 1988) and *Martinez v. School Bd*, 861 F.2d 1502 (11th Cir.1988), in which the Ninth and Eleventh Circuits found the risk of HIV transmission so remote as to not constitute a "significant risk". These cases, however, are distinguishable from the present one. The cases cited by Plaintiff arose in the classroom setting, where contact between teachers and students would be casual. The risk of HIV transmission in that setting is not comparable to the present case, where Dr. Scoles would be performing surgery. If Dr. Scoles were to suffer a cut while operating, his blood could come into contact with that of the patient. The parties do not dispute the fact

that blood-to-blood contact is a mode of HIV transmission.

## B. Americans with Disabilities Act

■ Plaintiff argues that Defendants' actions also violated Title I of the Americans with Disabilities Act ("ADA").[3] Plaintiff would be entitled to summary judgment on the ADA claim if the court were to conclude as a matter of law that Dr. Scoles was not a "direct threat to the health or safety of other individuals in the workplace." *See* 42 U.S.C.A. § 12113(a)–(b) (West Supp.1994). The ADA defines "direct threat" as a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C.A. § 12111(3) (West Supp.1994).

Plaintiff asserts that he does not pose a "direct threat". Plaintiff relies on the ADA definitions as well as portions of the interpretive guidelines provided by the Equal Employment Opportunity Commission ("EEOC") which prohibits employers from discriminating based on only a slightly increased risk of harm. 29 C.F.R. § 1630 App. at 403 (1994). The risk can only be considered when it poses a significant risk, i.e., high probability of substantial harm; a speculative or remote risk is insufficient. *Id.* Plaintiff argues that, since the probability of surgeon-to-patient transmission is low, the regulations require summary judgment in favor of Plaintiff.

Although Plaintiff focuses on the probability of the harm, the same EEOC guidelines adopt the *Arline* standard and require consideration of the duration and severity of the harm. Since the risk will endure as long as Dr. Scoles performs surgery and the harm is a fatal disease, Plaintiff does not convince the court that he is not a "direct threat" and entitled to judgment as a matter of law. Thus, Plaintiff's Summary Judgment Motion will be denied.

**3.** The ADA prohibits discrimination on the basis of disability as follows:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, ad-

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Rehabilitation Act of 1973

■ Defendants move for summary judgment on Plaintiff's claims under the Rehabilitation Act because Dr. Scoles is not an "otherwise qualified individual with a disability" and not entitled to protection under the Act. Defendants rely on cases that have denied protection against disability discrimination to HIV-positive persons. Some of the cases cited are very applicable to the instant case as they pertain to invasive procedures.

The most extensive consideration of the risk posed by an HIV-positive surgeon is found in a New Jersey case, *Estate of Behringer v. Medical Center*, 249 N.J.Super. 597, 592 A.2d 1251 (1991). In *Behringer*, the defendant suspended the surgical privileges of a ear, nose and throat surgeon after he was discovered to have AIDS. *Id.* at 1260. The plaintiff asserted a cause of action under the New Jersey Law Against Discrimination, N.J.S.A. 10:5–4.1, charging discrimination on the basis of handicap. *Id.* at 1274. The defendants claimed that the surgeon's handicap presented a materially enhanced risk of substantial harm in the workplace, the standard necessary for a defense under the New Jersey statute. *Id.* at 1276. The plaintiff in *Behringer* also emphasized that the risk of HIV transmission was low. *Id.* at 1279. The court, however, held that the "risk of transmission is not the sole risk involved." *Id.* The *Behringer* court realized that the debate on the quantifiable risk of HIV transmission from doctor to patient "will rage long into the future". *Id.* at 1280. Nevertheless, the court considered the harm if the patient were to come in contact with the surgeon's blood. At the very least, the patient would have to undergo HIV testing for months or even years. *Id.* at 1279. The court concluded that the defendant medical center had met the burden of proving a "reasonable probability of substantial harm." *Id.* at 1283. Thus,

vancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C.A. § 12112(a) (West Supp.1994).

the plaintiff was not entitled to recovery under New Jersey's anti-discrimination statute. *Id.*

Other courts that have addressed the situation have reached the same conclusion. The Fifth Circuit has held that a HIV-positive surgical technician is not "otherwise qualified" and thus not protected by the Rehabilitation Act. In *Bradley v. U. of Texas M.D. Anderson Cancer Center,* 3 F.3d 922 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994), the court considered the Rehabilitation Act claim of a surgical technician who often handled sharp instruments during surgery and frequently placed his hands inside the body cavity. *Id.* at 924. The court looked to the *Arline* factors and acknowledged that the risk of transmission from the technician to the surgical patient was small. *Id.* Following *Arline,* the court also noted that the duration of the risk was perpetual and that the consequence of transmission was catastrophic. *Id.* Those factors were sufficient to make the plaintiff not "otherwise qualified." *Id.* *See also Leckelt v. Bd of Comm'rs of Hosp. Dist. No. 1,* 909 F.2d 820, 829 (5th Cir.1990) (risk of HIV transmission from health care worker to patient is but one of four relevant *Arline* factors).

Similarly, in *Doe v. Washington Univ.,* 780 F.Supp. 628 (E.D.Mo.1991), the court considered the Rehabilitation Act claim of a dental student who was not permitted to complete his education because he was HIV-positive. *Id.* at 630. Although the risk of transmission was "low but existent" and "not now capable of precise measure", the court noted that the likely consequence of transmission would be a patient's death from AIDS. *Id.* at 633–34. The court found that the plaintiff was not "otherwise qualified" and granted the defendant's motion for summary judgment. *Id.* at 635.

The court agrees with the analysis of these cases. As the *Doe* court stated, the risk of surgeon-to-patient transmission of HIV is "not now capable of precise measure". Plaintiff argues that the risk is so small as to not constitute a "significant risk". Nevertheless, the parties agree that the risk exists. So long as Dr. Scoles performs surgery, that risk to his patients will continue to exist. Furthermore, the potential harm could not be more severe. Plaintiff argues that there are other risks that patients willingly undertake that are more likely to occur than the transmission of HIV during surgery. Plaintiff, however, cannot point to another example where the potential harm is a disease that is nearly universally fatal. The court cannot conclude that Defendants must permit Plaintiff to perform surgery without restriction. Considering the nature of the risk, Plaintiff was not "otherwise qualified" to perform as an orthopedic surgeon. Defendants were justified in restricting Plaintiff's activities and did not violate the Rehabilitation Act.

**B. Americans with Disabilities Act**

■ Defendants move for summary judgment on Plaintiff's ADA claims using several arguments. Defendants argue that Plaintiff did not have the necessary employment relationship with Defendants as required by the ADA. Defendants claim that they did not take certain adverse actions against Plaintiff and that Defendants did not cause certain losses claimed by Plaintiff. Plaintiff claims that he is entitled to summary judgment because the risk of HIV transmission is too low to justify Defendants' actions under the ADA.

Defendants focus on issues unrelated to the risk of HIV transmission in arguing for summary judgment on the ADA claim. The court finds, however, that the same analysis supporting summary judgment for Defendants on the Rehabilitation Act claims can be applied to the ADA claims.

The ADA prohibits employers from discriminating on the basis of a disability but permits employers to require that the employee "not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C.A. §§ 12112(a), 12113(a)–(b) (West Supp.1994). The ADA defines "direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C.A. § 12111(3). The EEOC has issued interpretive guidelines discussing the "direct threat" standard.

Plaintiff relies on one part of the EEOC guidelines which suggests that a high probability of harm is necessary to constitute a "direct threat". The guidelines state "[t]he risk can only be considered when it poses a significant risk, i.e., high probability, of substantial harm; a speculative or remote risk is insufficient." 29 C.F.R. § 1630 App. at 403 (1994). The same guidelines, however, direct the employer to consider the duration of the risk and the nature and severity of the potential harm in making decisions with regard to an individual with a physical disability. *Id.*

The guidelines state that a speculative or remote risk is insufficient to justify discrimination while a high probability is sufficient. This standard, emphasized by Plaintiff, is difficult to apply in the instant case, where both parties acknowledge that there are various estimates of the probability of surgeon-to-patient HIV transmission. Plaintiff quotes a range of roughly 1/40,000 to 1/400,000. (Pl. Br. p. 22). Defendant quotes 1/40,000 to 1/150,000. (Def. Reply Br. p. 38). At the very least, there is a great deal of uncertainty in the measure of the risk.

The other factors discussed in the guidelines are the duration and severity factors derived from *Arline*. The current knowledge about HIV with regard to these factors is more certain. With no known cure, the duration of the risk posed by Dr. Scoles to his patients in a surgical setting is permanent. The severity of the harm is a disease that, at present, is fatal in most cases. By indicating that employers should consider the *Arline* factors, the ADA guidelines recall the analysis of the Rehabilitation Act cases. It is understandable that the same analysis be applied under both acts, as the Rehabilitation Act and the ADA both protect the rights of the disabled in employment. Thus, the same reasoning that leads this court to concur with those that have held that a HIV-positive health care worker performing invasive procedures is not "otherwise qualified" under the Rehabilitation Act supports the conclusion that Dr. Scoles poses a "direct threat" to the health of his patients.

Plaintiff cautions the court against making a decision based on prejudices or stereotypes surrounding AIDS. That is not the case here. The court has reviewed the extensive documentary evidence submitted by both parties. The deposition testimony and medical literature reveal two facts about HIV. First, the knowledge of the probability of HIV transmission from surgeon to patient is very limited. Second, the disease, at present, is almost always fatal. In light of these facts, Defendants reasonably decided that Dr. Scoles's patients should not undergo an invasive procedure without knowledge of his HIV status. Based on an analysis of the risk prescribed by law, the court finds that Defendants did not violate the Rehabilitation Act or the Americans with Disabilities Act.

An appropriate Order follows.

### ORDER

AND NOW, on this 7th day of December, 1994, in consideration of the following: (1) Defendants' Motion for Partial Summary Judgment, (2) Plaintiff's Second Motion for Partial Summary Judgment, (3) Defendants' Combined Reply Brief in Support of their Motion for Partial Summary Judgment and Answering Brief in Opposition to Plaintiff's Second Motion for Summary Judgment, (4) Plaintiff's Reply Brief in Support of Plaintiff's Second Motion for Partial Summary Judgment, all supplemental submissions and for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that:

1. Plaintiff's Second Motion for Partial Summary Judgment is DENIED;

2. Defendants' Motion for Partial Summary Judgment is GRANTED;

3. Judgment is entered in favor of Defendant and against Plaintiff on Plaintiff's claims that Defendants violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act") and Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111. Plaintiff's claim that Defendants violated the Rehabilitation Act by removing Plaintiff's name from the panel of orthopedic consultants for Mercy Work Care and Mercy Careport are excluded from this paragraph. Plaintiff's claim arising from the removal of Plaintiff's name from the panel for Mercy

Work Care and Mercy Careport remains to be decided at trial.