**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Plaintiff,**

v.

**DOLPHIN CRUISE LINE, INC., American Entertainment Productions, Inc., & Ulysses Cruises, Inc., Defendants.**

**No. 95–292–CIV.**

United States District Court,
S.D. Florida.

June 27, 1996.

---

Thomas Earl Elfers, Equal Employment Opportunity Commission, Miami, FL, for Equal Employment Opportunity Commission.

Patrick Charles Barthet, Gary E. Davidson, Miami, FL, for Dolphin Cruise Line, Inc.

William R. Scherer, Albert L. Frevola, Jr., Conrad, Scherer, James & Jenne, D. Wesley Newhouse, Thomas A. Dillon, Lane Alton & Horst c/o Conrad Scherer Jenne, Fort Lauderdale, FL, for American Entertainment Productions, Inc.

### OMNIBUS ORDER ON PARTIAL SUMMARY JUDGMENT MOTIONS

FERGUSON, District Judge.

**THIS CAUSE** came before the Court on June 10, 1996 for a hearing on various motions for summary judgment.

### Background

This action is brought by the Equal Employment Opportunity Commission ("the EEOC") pursuant to the Americans with Disabilities Act, ("ADA") on behalf of David Sievers, the charging party, against Dolphin Cruise Line, Inc. ("Dolphin"), American Entertainment Productions, Inc., ("American")[1] and Ulysses Cruises, Inc., ("Ulysses"). Mr. Sievers applied for a position as entertainer aboard one of Dolphin's ships, through American, a recruiting agency retained by Dolphin. American sent Sievers a six month contract of employment, signed by its personnel director, Wesley R. Turner, conditioned on the outcome of a mandatory medical examination, which included a HIV test.

---

1. The EEOC and American entered into a settlement agreement and has submitted a proposed consent order to the court for its approval.

The contract designated Sievers as an Entertainer/Cruise staff member on the Ocean Breeze, one of the vessels managed by Ulysses and for which Dolphin arranges cruises. Wesley Turner of American, on the instruction of Tom Lacy, Dolphin's Entertainment Director, rescinded Sievers's employment contract when Sievers informed him that he tested HIV positive.

### Summary Judgment, Generally

A district court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party has the burden of proving its entitlement to summary judgment. *Id.*

### I. Dolphin and Ulysses as Single Employer

The plaintiff alleges that under the ADA, Dolphin and Ulysses together comprise a single employer and that each should be precluded from asserting otherwise.

#### A. Applicable Law

■ Traditionally, the concepts of "single employer" and "joint employer" have been used by courts either to override the separate incorporation of a commonly owned or operated parent and subsidiaries, or for independently owned and operated companies where both controlled some aspects of an employee's work day. *NLRB v. Browning–Ferris Industries of Pa. Inc.*, 691 F.2d 1117 (3rd Cir.1982); *EEOC v. Southwestern Group Financial, Inc.*, 21 Fair Empl.Prac. Cases (BNA) 38, 39, 1979 WL 22 (S.D.Tex. 1979).

> Joint Employer ... is characterized as companies who have historically chosen to handle jointly important aspects of their employer-employee relationship, ... while single employer status ultimately depends on all the circumstances of the case and is characterized as an absence of an arm's

length relationship found among unintegrated companies.

*Browning–Ferris Industries of Pa. Inc.*, 691 F.2d at 1122. The terms are often used synonymously for jurisdictional purposes and the test is interchangeable. *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir.1987); *Williams v. New Orleans S.S. Ass'n*, 341 F.Supp. 613, 616 (E.D.La.1972); *Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico*, 929 F.2d 814, 820 n. 16 (1st Cir.1991) (noting the occasional lack of precise usage of the terms). Either term can be used to impose joint liability. *Southwestern Group Financial, Inc.*, 21 Fair Empl.Prac.Cases (BNA) at 39. A charging party may have an employment relationship with more than one employer, *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir.1977), but the court must find sufficient indication that there is such active interrelationship between the entities that they can be regarded as a single employer of the charging party. *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir.1983).

To support a finding that Dolphin and Ulysses acted as a single employer, there must be evidence of: (1) interrelation of operations, (2) common management, (3) centralized control of labor relationships, and (4) common ownership or financial control. *Baker*, 560 F.2d at 392; *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir.1982); *Berkowitz v. Allied Stores of Penn–Ohio, Inc.*, 541 F.Supp. 1209, 1213 (E.D.Pa.1982) (the keynote is active, intimate interrelationship). The totality of the circumstances controls, thus, no single factor is conclusive, and the presence of all four factors is not necessary to a finding of single employer.

#### B. Evidence Supporting Single Employer Allegations

■ The plaintiff contends that the functional interrelationship between Dolphin and Ulysses is evidenced by (a) the exclusive services which Dolphin and Ulysses provide for each other; (b) joint advertising and shared logo/letterheads; (c) centralized check writing; and (d) shared accounting services and offices. Specifically, Dolphin provides

services principally for the benefit of Ulysses, such as sales and purchasing, marketing, marine operations, personnel and technical support. Ulysses operates the ships and contracts with concessionaires on behalf of the vessels or the owning companies. The companies are also marketed as twin operations, use each other's logo or letterhead interchangeably, issue checks on each other's behalf, and maintain personnel and other business records at the same office. Collectively, these are strong indicia of interrelated operations. *McKenzie*, 834 F.2d at 933 (joint advertising); *Smith v. Jones Warehouse, Inc.*, 590 F.Supp. 1206, 1208 (N.D.Ill.1984) (shared logo/letterhead); *Baker*, 560 F.2d at 392 (centralized check writing); *Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211, 1214 (9th Cir.1989) (shared accounting services); *EEOC v. Financial Assur., Inc.*, 624 F.Supp. 686, 690 (W.D.Mo.1985) (shared offices).[2]

There is also evidence of centralized control of labor relations. *Perrin v. Florida Power & Light Co.*, 35 Fair Empl.Prac.Cas. (BNA) 117, 118, 1984 WL 987 (S.D.Fla.1984); *Hairston v. McLean Trucking Co.*, 520 F.2d 226, 230 (4th Cir.1975); *Armbruster*, 711 F.2d at 1338–39. Dolphin recruits employees for itself and Ulysses, approves personnel discharges and stores the personnel records of both corporations. Employees working for Ulysses can be transferred to Dolphin.

■ Finally, the sole owner of Dolphin is also the president of both Dolphin and Ulysses, sits on the board of directors for both companies, and manages daily operations and personnel of the corporations. Both corporations have at least three individuals who serve as members of the board of directors for both companies, and lower level managers of both corporations assist each other in the daily operations of the companies, which further evidences common management.

---

2. Of further note is that the defendants Ulysses and Dolphin have been represented by a single law firm in this lawsuit.

3. Alternatively, the plaintiff argues that at a minimum, the defendants are liable on an agency theory. The court finds that the same evidence of interaction between the corporations which supports a finding of single employer could also support a finding of agency. *EEOC v. Upjohn*,

*McKenzie*, 834 F.2d at 933; *Baker*, 560 F.2d at 392; *Armbruster*, 711 F.2d at 1338. The chief financial officer of Dolphin serves as treasurer for Ulysses, and Dolphin's accounting department handles Ulysses's budget, tax and annual statements, and makes deposits into and withdrawals from Ulysses's bank account. These facts make a finding of joint employer irrefutable. *Sedlacek v. Hach*, 752 F.2d 333, 336 (8th Cir.1985). All of the uncontroverted evidence supports a finding of single employer as a matter of law.[3]

## II. HIV as a Direct Threat to Others

■ The defendants argue that allowing Sievers to work on the ship as an entertainer "pose[s] a significant risk of harm to himself and to others" because he is HIV positive. The EEOC seeks a ruling from the court on the issue of direct threat.

"Direct threat means a significant risk [of substantial harm] to the health or safety of [the individual or] others that cannot be eliminated [or reduced] by reasonable accommodation." 42 U.S.C. § 12111(3) (1995).

The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:

(1) The duration of the risk;

(2) The nature and severity of the potential harm;

(3) The likelihood that the potential harm will occur; and

---

445 F.Supp. 635, 639 (N.D.Ga.1977) (agency may be inferred from the facts of the interaction). An agent is one authorized to transact all business of a principal, or all of a principal's business of some particular kind, or all business at a particular place. BLACK'S LAW DICTIONARY 63 (6th ed. 1992). In light of the findings that Ulysses and Dolphin were a single employer for whom Sievers would have worked, had he been hired, it is not necessary to decide the agency issue.

(4) The imminence of the potential harm . . .

An employer . . . is not permitted to deny an employment opportunity to an individual with disability merely because of a slightly increased risk. The risk can only be considered when it poses a . . . high probability of substantial harm; a speculative or remote risk is insufficient. . . . Generalized fears about risks from the employment environment, such as exacerbation of the disability caused by stress, cannot be used by an employer to disqualify an individual with a disability.

29 C.F.R. § 1630.2(r) (1984).

The defendants argue that on the ship, Sievers would have intimate contact with other crew members and passengers. Consequently, they contend, he poses a direct threat because he (1) could transmit the HIV virus to others; (2) is susceptible to the acquisition of and could transmit other contagious diseases to which HIV/AIDS infected patients are particularly susceptible; and (3) experiences bouts of depression which reduces his effectiveness as an employee. Further, they argue, the risk is increased by the relatively small, congested nature of the ship, and the necessarily close contact between entertainers and other crew members and passengers. This increased risk, for which they could provide no reasonable accommodation, would subject the defendants to tort liability from other crew members, passengers or Sievers himself.

The most current medical knowledge teaches that the significant risk of harm defense is without merit since HIV cannot be transmitted through casual contact. Public health authorities and medical experts agree that the risk of HIV transmission in an employment setting is remote. Furthermore, the defendants have failed to demonstrate, by other than speculation and stereotyping, that the health risk posed by Sievers in the particular work environment was significant. *See School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 288, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307 (1987) (courts should normally defer to the reasonable medical judgment of public health officials); *Harris v. Thigpen*, 941 F.2d 1495, 1526 (11th Cir.

1991) (objective is to avoid significant health risk while protecting the handicapped "from sweeping deprivations based on prejudice, stereotypes or unfounded fear"); *Doe v. District of Columbia*, 796 F.Supp. 559, 569 (D.D.C.1992) (based on state of medical knowledge, "there is no measurable risk of [HIV positive firefighter] transmitting HIV to other firefighters or the public during the performance of official firefighting duties"); *New York State Ass'n. for Retarded Children, Inc. v. Carey*, 612 F.2d 644, 650 (2d Cir.1979); *Chalk v. United States Dist. Ct. Cent. Dist. of California*, 840 F.2d 701 (9th Cir.1988) (HIV positive classroom teacher not required to disprove every theoretical possibility of harm); *Thomas v. Atascadero Unified School Dist.*, 662 F.Supp. 376, 380 (C.D.Cal.1987) (enjoining school officials from excluding HIV positive child from kindergarten); *Ray v. School Dist. of DeSoto County*, 666 F.Supp. 1524, 1535 (M.D.Fla.1987) (court enjoined exclusion of HIV positive hemophiliacs from classroom); *Martinez v. School Bd. of Hillsborough County, Fla.*, 711 F.Supp. 1066, 1070–72 (M.D.Fla.1989) ("remote theoretical possibility" of transmission of AIDS via tears, saliva and urine does not rise to the level of "significant").

*Scoles v. Mercy Health Corp. of Southeastern Pa.*, 887 F.Supp. 765 (E.D.Pa.1994) and *Mauro v. Borgess Medical Center*, 886 F.Supp. 1349 (W.D.Mich.1995), cases relied upon by the defendants, are distinguishable. The risk of disease transmission in both cases was heightened because surgical technicians handle sharp instruments that could cause puncture wounds, and often place their hands inside the body cavities of patients. There is no issue of fact regarding Mr. Sievers's condition, or the nature of his duties as an entertainer and cruise staff person. Whether he presents a significant health risk in his employment can be decided as a matter of law.

### III.  Sievers as an Independent Contractor

Another defense presented by the defendants is that the ADA does not apply because the relationship contemplated by the parties was not for employment but for an independent contractor. The signed contract

which was sent to Sievers was labeled an independent contractor agreement.[4] An independent contractor is a person who contracts with another to do something for him, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may not be an agent. BLACK'S LAW DICTIONARY, 770 (6th ed. 1992) (citing Restatement, Second, Agency, § 2). An employee is a person in the services of another under any contract of hire, where the employer has the power or right to control and direct the employee in the material details of how the work is to be done. *Id.* at 525.

■■■ The EEOC argues that had Sievers been hired, the manner and means by which he would perform his work would have been controlled by American, Dolphin and Ulysses. The court considers the hiring party's right to control the manner and means by which the work is accomplished in determining whether a worker is an employee or independent contractor pursuant to general common law agency theory. *Nationwide Mut. Insur. Co., v. Darden,* 503 U.S. 318, 322, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992); *Daughtrey v. Honeywell, Inc.,* 3 F.3d 1488, 1495–96 (11th Cir.1993).

The plaintiff presented undisputed evidence that American controlled the shows, including selection of the cast, costumes, backing tapes, mixing boards and other equipment used aboard the Ocean Breeze by the entertainers. Dolphin controlled every other aspect, including the scheduling of the performances and hours of employment, meals, lodging aboard the cruise ship, and cruise staff uniforms. Viewing the evidence in the light most favorable to the defendants, as this court must, had David Sievers been hired, he would have had no choice of cruise

staff duties, and no discretion in the performance of those duties. His schedule or the number of hours he worked would be determined by the employer, and he would not have been allowed to select the clothing to be worn, what he ate or where he slept. The court finds that notwithstanding the label, the relationship described in the contract demonstrates that Sievers, if he had been hired, would have been an employee. *Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226, 232 (2d Cir.1995) (employment status is not determined solely by the label used in the contract between the parties).

## IV. Failure of Conciliation Efforts

■■■ The defendants have raised as an affirmative defense the plaintiff's failure to satisfy conditions precedent, *i.e.,* that the EEOC has failed to engage in good faith conciliation before filing a lawsuit.

The enforcement provision of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e–5 provides that if after investigation, the Commission determines:

> there is reasonable cause to believe that the charge [of discrimination] is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practices by informal methods of ... conciliation.

To satisfy the statutory requirements of conciliation, the Commission must:

> (1) outline to the employer the reasonable cause for its reasonable belief that the statute has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the attitudes of the employer.

*Equal Employment Opportunity Commission v. Klingler Electric Corp.,* 636 F.2d 104, 107 (5th Cir.1981).

---

4. The job description for new recruits sent to Sievers reads:

This is a job description for an Entertainer and Cruise Staff person working on Dolphin Cruise Ship.

As a Cruise Staff member, you perform a multitude of duties. The cruise lines does a great job in keeping the passengers active, and literally every activity that happens in the course of a cruise is conducted or assisted by one of the

Cruise Staff under the direction of the Cruise Director. These activities include game tournaments, (such as horseshoes, shuffleboard, ping pong, etc.), contests, and pool and deck games. Cruise Staff also assists with island tours and gangway. In addition, leading an elementary dance class, an aerobics class or a water aerobics class may be necessary. The Cruise Staff will assist at a lifeboat drill shortly after the start of each cruise.

The plaintiff presented unrefuted evidence that it made repeated attempts to conciliate. Specifically, on February 15, 1994, the EEOC sent Dolphin a Letter of Determination inviting Dolphin to conciliate. On March 9, 1994, the EEOC conducted an on-site investigation of Dolphin's facilities for the purpose of conciliation. On March 10, 1994, Dolphin informed the Commission, by letter, that it had not made the decision not to hire Sievers, was not responsible for decisions made by its concessionaires, but was willing to hire Sievers "in a position for which he applies, and for which he is qualified." Sievers stated a preference for a monetary settlement, which Dolphin rejected. On April 18, 1994, the EEOC sent Dolphin a letter of conciliation failure.

The court finds by uncontested evidence that the plaintiff satisfied the statutory requirements by attempts to conciliate. *Marshall v. Sun Oil Co. (Delaware)*, 605 F.2d 1331, 1334 (5th Cir.1979) (the commission is required only to make a good faith effort to effectuate voluntary compliance); *Equal Employment Opportunity Commission v. Keco Industries*, 748 F.2d 1097 (6th Cir.1984) (EEOC is not required to engage in further discussion when the employer is unresponsive to its proposal).

Based on the foregoing findings of fact and conclusions of law, it is

**ORDERED AND ADJUDGED** as follows:

Plaintiff's Motions for Partial Summary Judgment on the issues of: (1) Single Employer [D.E. 94], (2) Direct Threat [D.E. 86], (3) Independent Contractor filed May 1, 1996, (4) Agency filed May 1, 1996, and (5) Failure of Conciliation [D.E. 83], are all **GRANTED.**